UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | Cause No. MO-22-CR-00154 |
| RAYMOND CHARLES JR | § § § | |

**DEFENDANT'S MOTION TO DISMISS**

COMES NOW Defendant Raymond Charles Jr, and, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), moves to dismiss the Indictment, which charges knowing possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). *See* Doc. No. 14. The Court should dismiss the Indictment because § 922(g)(1) is unconstitutional under the Second Amendment, both facially and as applied to Mr. Charles, under the new standard announced by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). In support thereof, Mr. Charles shows the following:

### I. BACKGROUND

Mr. Charles was pulled over on July 1, 2022, for allegedly running a stop sign and speeding. The officer questioned him, and Mr. Charles said that there was a gun in the car. The officer searched the car and found the gun. Mr. Charles was arrested and later charged by indictment with knowingly possessing a firearm after conviction of a crime punishable by more than one year in prison, in violation of 18 U.S.C. § 922(g)(1). *See* Doc. No. 14.

Mr. Charles is set for a jury trial October 3, 2022. Doc. No. 34. He is ready for trial.[1]

### II. LEGAL STANDARD

---

[1] As this Court denied a similar motion to dismiss recently, the filing of this motion should not delay trial. *See United States v. Collette*, No. MO:22-CR-00141-DC, 2022 WL 4476790 (W.D. Tex. Sept. 24, 2022).

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." FED. R. CRIM. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *see* FED. R. CRIM. P. 12(d) (permitting the court to rule on a motion involving factual issues provided the court states its essential findings on the record); *see also*, *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("a pretrial dismissal is essentially a determination that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt."). A motion alleging a defect in the indictment must be made before trial. FED. R. CRIM. P. 12(b)(3).

### III.     LEGAL ARGUMENT

Section 922(g)(1) violates the Second Amendment both facially and as applied to Mr. Charles. Possession of a firearm commonly used for self-defense is the most clearly protected conduct by the plain text of the Second Amendment. And there is no historical tradition from the founding era of criminalizing possession of firearms by felons, particularly non-violent felons like Mr. Charles.

The Second Amendment to the United States Constitution mandates that a "well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." U.S. CONST. amend. II. The Supreme Court held in *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008), that the Second Amendment codified an individual right to possess and carry weapons, explaining that the inherent right of self-defense is central to its protections. *See also McDonald v. City of Chicago*, 561 U.S. 742, 767

(2010) (holding "that individual self-defense is the central component of the Second Amendment right.").[2]

Following *Heller*, the Fifth Circuit "adopted a two-step inquiry for analyzing laws that might impact the Second Amendment." *Hollis v. Lynch*, 827 F.3d 436, 446 (5th Cir. 2016). First, courts would ask "whether the conduct at issue falls within the scope of the Second Amendment right." *United States v. McGinnis*, 956 F.3d 747, 754 (5th Cir. 2020) (quoting *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives [NRA]*, 700 F.3d 185, 194 (5th Cir. 2012). "To make that determination, [courts] look[ed] to whether the law harmonizes with the historical traditions associated with the Second Amendment guarantee." *McGinnis*, 956 F.3d at 754. If the conduct was outside the scope of the Second Amendment, then the law was constitutional, otherwise, courts proceed to the second step, to determine whether to apply strict or intermediate scrutiny. *Id*. Courts subsequently upheld firearms restrictions for felons, in part, based on the second means-end scrutiny step. *See, e.g.*, *United States v. Williams*, 616 F.3d 685, 691-94 (7th Cir. 2010) (holding § 922(g)(1) survives Second Amendment challenge under intermediate scrutiny).[3]

The Supreme Court has now abrogated that two-step framework. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126-27 (2022);[4] *see United States v. Collette*,

---

[2] Though the Court in *Heller* and *McDonald* emphasized the importance of self-defense specifically in the home, the *Bruen* Court subsequently explained that the right to carry a firearm for self-defense extends outside of the home as well. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2134-35 (2022).

[3] The Fifth Circuit has upheld § 922(g)(1) post-*Heller* without applying the two-part framework, by relying on pre-*Heller* caselaw and dicta in *Heller* that the opinion should not be understood as casting doubt on longstanding prohibitions such as those restricting firearms for felons. *See, e.g., United States v. Anderson*, 559 F.3d 348, 352 (5th Cir. 2009); *see also United States v. Rodriguez*, 590 F. App'x 430, 431 (5th Cir. 2015).

[4] Among those cases specifically abrogated by *Bruen* are those upholding § 922(g)(1) under the two-part framework. *See Bruen*, 142 S. Ct. at 2126-27 (citing *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019)).

3

No. MO:22-cr-141-DC, 2022 WL 4476790, at *2 (W.D. Tex. Sept. 25, 2022). The Court rejected the second step of that framework and reasoned that "[s]tep one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Bruen*, 142 S. Ct. at 2127. Under the Court's new framework "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 2126. The government then "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside of the Second Amendment's 'unqualified command.'" *Id.* (citation omitted).

Under the *Bruen* framework, § 922(g)(1) violates the Second Amendment. Section 922(g)(1) prohibits individuals from exercising the most fundamental Second Amendment right—the right to possess a firearm for protection. It is clearly conduct covered by the plain text of the Second Amendment. And, the Government cannot show that the statute is consistent with historical traditions, because, as courts have acknowledged for years, there are no such similar restrictions on felons from the founding era.

### A. Section 922(g)(1) Facially Violates the Second Amendment.

Section 922(g)(1) violates the Second Amendment on its face under the *Bruen* framework. The *Bruen* Court drew no distinction between as-applied and facial challenges under the Second Amendment; in fact, neither term appears anywhere in the majority opinion. Nevertheless, the Fifth Circuit has explained that to sustain a Second Amendment facial challenge, "the challenger must establish that no set of circumstances exists under which the statute would be valid." *United States v. McGinnis*, 956 F.3d 747, 752 (5th Cir. 2020) (citing

*United States v. Salerno*, 481 U.S. 739, 745 (1987)). Courts generally consider the constitutionality of a statute as applied before determining its facial constitutionality, to avoid striking down the statute in its entirety. *See Hollis v. Lynch*, 121 F. Supp. 3d 617, 629-30 (N.D. Tex. 2015) (citing *United States v. Vuitch*, 402 U.S. 62, 70 (1971), *Renne v. Geary*, 501 U.S. 312, 324 (1991)). For the purposes of analytical clarity, however, Mr. Charles addresses his facial challenge first in this brief.

### 1. The Second Amendment's plain text covers firearm possession.

Under *Bruen*'s new framework, courts are tasked with determining, first, whether the Second Amendment's plain text covers an individual's conduct. 142 S. Ct. at 2129-30. In such cases, the Constitution presumptively protects the conduct. *Id.* The burden then shifts to the Government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*.

The conduct prohibited by § 922(g)(1)—i.e., possession of a firearm—is clearly covered by the plain text of the Second Amendment. *See Collette*, 2022 WL 4476790, at *2. The text of § 922(g)(1) is unlimited in its reach. It is not limited by the type of firearm, the purpose for which the firearm might be used, or the place of possession. Rather, it makes it unlawful for any person who has been convicted of a crime punishable by more than one year imprisonment, to possess any firearm for any purpose. 18 U.S.C. § 922(g)(1).[5] It impacts the core Second Amendment right to possess a firearm for self-defense. *See McDonald*, 561 U.S. at 767; *see also generally Bruen*, 142 S. Ct. 2111.[6]

---

[5] The statute does not exempt non-dangerous or non-violent felons and includes only limited exceptions for those who committed certain antitrust or business crimes, or those convicted of state misdemeanors punishable by 2 years or less. *See* 18 U.S.C. § 921(a)(20).

[6] Legislative history illustrates that the passage of § 922(g)(1) reflected a now outdated conception of the Second Amendment, and clearly implicates those rights post-*Heller*. Congress, in passing the

The fact that § 922(g)(1) only places a restriction on *felons* as opposed to all individuals is irrelevant to this stage of the *Bruen* framework.[7] A person's status is not relevant to whether the Second Amendment protects the conduct, but to whether historical traditions support restricting the right. There is limited caselaw acknowledging this distinction, but the *Heller* Court rejected the theory that the "People" protected by the Second Amendment were limited to a subset—i.e., those in a militia. *See Heller*, 554 U.S. at 579-81, 592-600. The Court explained that when the Constitution refers to "'the people,' the term unambiguously refers to all members of the political community, not an unspecified subset," and that there is a

---

modern version of § 922(g)(1), recognized some potential Second Amendment concerns, but those concerns were assuaged by assurances that the Second Amendment does not confer an individual right to bear arms, a position since rejected by the Supreme Court in *Heller*. The Senate Report explains:

> A number of witnesses at the hearings have raised the question of the constitutionality of Federal firearms legislation, because it would interfere with individual rights guaranteed by the second amendment of the Constitution . . . . [court] decisions hold that the second amendment, unlike the first, was not adopted with the individual rights in mind, but is a prohibition upon Federal action which would interfere with the organization of militia by the states of the Union. . . . It is sometimes contended that, aside from the second amendment, there is a natural right to bear arms, or a right stemming from a State constitution. However, it is well settled that there is nothing inherent in any such right that renders it absolute. The overwhelming majority of State cases hold that the legislature may prescribe regulations and limitations with regard to the carrying of weapons. It is clear, for example, that a State law prohibiting the carrying of revolvers without a license, or forbidding possession of concealed weapons, does not violate either the Federal or that State's constitution. And it is clear that no body of citizens other than the organized State militia, or other military organization provided for by law, may be said to have a constitutional right to bear arms.

1968 U.S.C.C.A.N. 2112, 2169. Congress seemingly acknowledged that the provisions would infringe on an individual's right to bear arms but determined that no such individual right exists. That determination has since been proven incorrect.

[7] The *Heller* Court noted in dicta that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626–27. The language of course did not uphold § 922(g)(1), nor did it clarify how the question of a person's felon status properly fits into any analysis, much less the later framework announced in *Bruen*.

"strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Heller*, 554 U.S. at 580-81. The question has been expanded upon by one sitting Justice on the Supreme Court has explained that a person's status—e.g., felon—is properly considered in the question of the historical tradition, rather than the existence of the right. *See Kanter v. Barr*, 919 F.3d 437, 451–52 (7th Cir. 2019) (Barrett, J., dissenting), *abrogated by Bruen*, 142 S. Ct. 2111. Then-Judge Barrett reasoned that, under the language of *Heller* itself, the word "people" refers to "all Americans," meaning that even those who can be lawfully restricted, are not "categorically excluded from our national community." *Kanter*, 919 F.3d at 453. The "question is whether the government has the power to disable the exercise of a right that they otherwise possess, rather than whether they possess the right at all." *Id.* The alternative would be a largely unworkable and illogical test, which required courts to determine first whether conduct is protected relative to a person's status, and ultimately reduced the entirety of the Second Amendment analysis to this initial question.[8]

Therefore, the plain text of the Second Amendment covers the conduct at issue in § 922(g)(1), so the law is presumptively unconstitutional. *See Bruen*, 142 S. Ct. at 2126.

---

[8] The Supreme Court did not address this issue in *Bruen*, because the case involved a licensing provision rather than a complete restriction on firearm possession for those of a certain status.

### 2. The Government cannot meet its burden to show that § 922(g)(1)'s restrictions on firearms for felons are "consistent with the Nation's historical tradition of firearm regulation."

Under the *Bruen* framework, when the plain text of the Second Amendment covers the conduct at issue, the burden shifts to the Government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *See Bruen*, 142 S. Ct. at 2130. The Government cannot meet that burden.

To meet its burden, the Government must provide historical examples and support for the constitutionality of § 922(g)(1), and the Court is "entitled to decide a case based on the historical record compiled by the parties," rather than conducting its own historical surveys. *See id.* at 2130 n.6.[9] The Government cannot rely on a select few "outlier" regulations, but must show "a tradition of broadly prohibiting" conduct in the manner of § 922(g)(1). *See id.* at 2138, 2156.

The Supreme Court has explained that "when it comes to interpreting the Constitution, not all history is created equal. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Bruen*, 142 S. Ct. at 2136 (quoting *Heller*, 554 U.S. at 634-35). "The Second Amendment was adopted in 1791; the Fourteenth in 1868. Historical evidence that long predates either date may not illuminate the scope of the right if linguistic or legal conventions change in the intervening years." *Id.*[10]

---

[9] *See also Bruen*, 142 S. Ct. at 2150 ("Of course, we are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden.").

[10] The Fourteenth Amendment was specifically implicated in *Bruen* because it is the Fourteenth Amendment that imposes the Second Amendment's pronouncement on a state regulation or law. The Supreme Court left open the question of whether the proper time-period to consider, particularly for a federal statute, is 1791, the passage of the Second Amendment, or 1868, the passage of the Fourteenth Amendment. *See Bruen*, 142 S. Ct. at 2137–38. The failure to determine the issue was specifically identified by Justice Barrett as well in her concurrence. *Id.* at 2163 (Barret, J., concurring). Even in *Bruen*, the Court acknowledged that 19th century evidence was secondary to that from the

Similarly, the Supreme Court explained that "we must also guard against giving postenactment history more weight than it can rightly bear." *Bruen*, 142 S. Ct. at 2136. The Court expressed skepticism about reliance on laws passed long after the passage of the particular Constitutional Amendment and explained "to the extent later history contradicts what the text says, the text controls." *Id.* at 2137.

The Court also explained that the requisite similarity between the challenged law and historical examples in part depends on whether the problem addressed by the law has historically existed or is uniquely modern. *See Bruen*, 142 S. Ct. at 2131–33. When "a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* at 2131. The total handgun ban in *Heller* and public-carry restriction in *Bruen* involved this type of straightforward historical inquiry. *Id.* On the other hand, "cases implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced approach." *Id.* at 2132. "When confronting such present-day firearm regulations, this historical inquiry that courts must conduct will often involve reasoning by analogy . . . ." *Id.* Whether an historical regulation is a proper analogue for a uniquely modern regulation turns on whether they are "relevantly similar," based in part on how and why the regulations burden the Second Amendment right. *Id.* at 2132–33.

As in *Heller* and *Bruen*, historical examples of regulations proffered by the Government must be "distinctly similar" to § 922(g)(1) because the restriction does not address

---

nation's founding, *see id.* at 2137, and its value is likely even more limited when addressing a federal statute.

"unprecedented societal concerns or dramatic technological changes[.]" *See Bruen*, 142 S. Ct. at 2132–33. The restriction here is a total ban on firearm possession by felons. Whether the problem addressed is the specific danger posed by felons or by people suspected of being dangerous more broadly, both are general societal problems that have existed at least since the founding. The *Bruen* Court did not expressly define "distinctly similar," but the historical analysis therein illustrates that the term means that statutes are nearly identical or meaningfully the same, not simply analogous or "relevantly similar."[11]

There are no "distinctly similar" founding era laws demonstrating a tradition of broadly prohibiting firearm possession by felons. *See Kanter*, 919 F.3d at 454 (Barrett, J., dissenting) (noting scholars have not been able to identify any founding-era laws disarming all felons); *Collette*, 2022 WL 4476790, at *3-4. Congress passed the first version of the modern federal firearm ban for violent felons in 1938, and the law was only expanded to include non-violent felons in 1961, and to cover all possession in 1968. *See* Federal Firearms Act of 1938, 75 Cong. Ch. 850, § 2(e), 52 Stat. 1250, 1251 (repealed); Act of Oct. 3, 1961, Pub. L. No. 87–342, 75 Stat. 757 (repealed); Gun Control Act of 1968, Pub. L. 90–618, 82 Stat. 1213 (codified at 18 U.S.C. §§ 921–928). But modern statutes dispossessing felons of firearms, such as § 922(g)(1), bear "little resemblance to laws in effect at the time the Second Amendment was ratified[.]" *See United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011). Prior to *Bruen*, courts acknowledged this fact while reaching the conclusion that § 922(g)(1), or other provisions of

---

[11] The only historical example identified in *Bruen* as being sufficiently similar to analogize to the challenged New York public carry statute, was a Nineteenth century Texas statute that forbade anyone from "carrying on or about his person any pistol unless he has reasonable grounds for fearing an unlawful attack on his person." *Bruen*, 142 S. Ct. at 2153 (quoting 1871 Tex. Gen. Laws § 1). The statute is effectively identical to the New York statute which required applicants to demonstrate "proper-cause" to obtain a public-carry license.

10

§ 922, must be nevertheless constitutional, largely because of *Heller*'s description of such prohibitions as "longstanding." *See Booker*, 644 F.3d at 24 (citing *Heller*, 554 U.S. 626-27, 627 n. 16 (noting that the opinion does not cast doubt on longstanding prohibitions on firearm possession by certain individuals, including felons, which are presumptively lawful)); *see also Medina v. Whitaker*, 913 F.3d 152 (D.C. Cir. 2019).

This reasoning is irreconcilable with the framework laid out in *Bruen*. Even if courts find that firearm restrictions are consistent with dicta in *Heller* about "longstanding prohibitions," the *Bruen* court explained that the "government may not simply posit that the regulation promotes an important interest." *Bruen*, 142 S. Ct. at 2126. The Government must now provide distinctly similar historical examples from the founding era to prove consistency with the Nation's traditions. *See generally Bruen*, 142 S. Ct. 2111. Prior to *Bruen*, courts had already cautioned against relying on *Heller* as an affirmative declaration of the constitutionality of any similar statutes. *See United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) ("We do not think it profitable to parse these passages of Heller as if they contained an answer to the question whether § 922(g)(9) is valid. They are precautionary language. Instead of resolving questions such as the one we must confront, the Justices have told us that the matters have been left open."); *see also* Adam Winkler, *Heller's Catch-22*, 56 UCLA L. Rev. 1551, 1567 (2009) (explaining the *Heller* language includes no reasoning or explanation, was unbriefed, and constitutes dicta). The *Bruen* Court did not create an exception from its framework for firearm restrictions for felons or the mentally ill.[12] Courts

---

[12] The majority opinion in *Bruen* says nothing about this issue. Justice Kavanaugh, in a concurring opinion joined by Chief Justice Roberts, cited the "longstanding prohibitions" language from *Heller*. *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring). Justice Alito also noted in a concurrence that the opinion did not disrupt the holdings of *Heller*. *Id*. at 2157 (Alito, J., concurring). But neither

11

are simply not permitted to disregard the framework laid out in *Bruen*, based on dicta from *Heller*.

This Court recently found that § 922(g)(1) does not violate the Second Amendment. *See Collette*, 2022 WL 4476790. Respectfully, its conclusion and portions of the analysis were inconsistent with *Bruen*. The Court agreed with Collette that firearm possession was covered by the plain text of the Second Amendment. *See id*. at *2. It also conducted a "straightforward historical inquiry," what counsel has described as the "distinctly similar" analysis, and concluded there was no historical support for § 922(g)(1). *See id*. at *3-4. Under *Bruen*, this should have concluded the Court's analysis. The Court, however, then explained that with the "straightforward historical inquiry unclear, a more nuanced approach[ ] is necessary." *Id*. at *5. *Bruen* does not provide that the "more nuanced approach"—i.e., the "relevantly similar" standard—applies simply because there are no "distinctly similar" examples. Rather, this "nuanced approach" only applies in "other cases implicating unprecedented societal concerns or dramatic technological changes . . . ." *Bruen*, 142 S. Ct. at 2132. No such concerns are implicated by § 922(g)(1).

Moreover, the "nuanced approach" this Court undertook did not involve looking to "relevantly similar" "historical regulations" of firearms as in *Bruen*, but to examples of other constitutional rights that could be taken away from felons. *Collette*, 2022 WL 4476790, at *5-8. Without determining that felons are excluded from "the people" protected by the Constitution, the Court explained that the historical power to impair a felon's right to assemble or to vote demonstrates that the same felon "may be excluded from the Second

---

concurrence announced that § 922(g)(1) is constitutional or subject to a relaxed Second Amendment analytical framework.

Amendment's protections." *Id*. at *6-7. This type of reasoning does not appear in *Bruen*, and conflicts with *Bruen*'s direction that, "if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional." *Bruen*, 142 S. Ct. at 2131. It also fails to consider "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified," as required under *Bruen* when conducting the "relevantly similar" analysis. *See id*. at 2133. This Court was only able to find an historical tradition to support the constitutionality of § 922(g)(1) by circumventing the *Bruen* framework.[13]

Because the Government cannot show that § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation, it facially violates the Second Amendment. *See Bruen*, 142 S. Ct. at 2126.

**B. Section 922(g)(1) Violates the Second Amendment As Applied to Mr. Charles.**

Even if the Court determines that there are circumstances under which § 922(g)(1) would be constitutional, so as to not invalidate it facially, the statute violates the Second Amendment as applied to Mr. Charles. "As-applied challenges are the basic building blocks of constitutional adjudication[.]" *Gonzalez v. Carhart*, 550 U.S. 124, 168 (2007). "Unlike a facial challenge, an as-applied challenge does not contend that a law is unconstitutional as

---

[13] In *Collette*, this Court also acknowledged that the Government had not briefed the issue and conducted "its own historical inquiry to ensure this constitutional question received the imperative analysis." 2022 WL 4476790, at *3. The *Bruen* Court explained that the parties had a duty to conduct this historical analysis, and courts were under no obligation to do so for them. *See* 142 S. Ct. at 2130 n.6, 2150. This Court may have had the power to undertake this inquiry anyway, but by doing so without Government briefing, it deprived the defendant of the opportunity to address any historical examples.

written, but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Binderup v. Att'y Gen.U.S. of Am.*, 836 F.3d 336, 345 (3d Cir. 2016) (citation omitted).

As discussed above, Mr. Charles's conduct—i.e., possession of firearms in common use for self-defense—is clearly protected by the plain text of the Second Amendment. *See Bruen*, 142 S. Ct. at 2129-30. The burden is, thus, on the Government to show that disarming those with criminal records like his is consistent with the Nation's historical traditions. *See id*. at 2130. There is no such tradition of barring felons from firearm possession, let alone felons with records like Mr. Charles's.

Prior to *Bruen*, one circuit court had found § 922(g)(1) unconstitutional as applied to certain challengers. In *Binderup*, the Third Circuit determined that the crimes committed by the challengers, misdemeanor offenses of corrupting a minor and carrying a handgun without a license, were not sufficiently serious, and that applying § 922(g)(1) to them violated the Second Amendment. 836 F.3d 336. The court reasoned that the challengers were distinguishable from the historically barred class of those who had committed serious crimes. *See id*. at 349-50. The court explained that, though not dispositive, the lack of violence in a crime and actual sentences imposed are relevant considerations to whether the offense was sufficiently serious to merit disarming the person. *See id*. at 352.

Portions of the *Binderup* court's analysis are inconsistent with the *Bruen* framework, and its premise that there is an historical tradition of disarming those convicted of "serious crimes," is in many ways unsupported, as discussed above. Nevertheless, it stands for the proposition that there are unconstitutional applications of § 922(g)(1), at least with respect to those convicted of minor or non-violent offenses. That is even clearer after the *Bruen* decision.

There is no specific founding era basis for disarming all felons, particularly not those convicted of non-violent drug offenses like Mr. Charles. Rather, historical evidence shows that the power to strip people of Second Amendment rights extended only to those proven to be dangerous. *See Kanter*, 919 F.3d at 451 (Barrett, J., dissenting).[14]

Mr. Garcia's criminal history does not suggest that he is "dangerous." The predicate felonies identified in the Government's notice of intent to use evidence are drug offenses, being a felon in possession of a firearm, and a 22-year-old burglary. *See* Doc. No. 36. The Government cannot find "distinctly similar" prohibitions from the founding era on those convicted of similar offenses. *See generally Bruen*, 142 S. Ct. 2111.

Because the Government cannot show that restricting firearms for those with criminal histories like Mr. Charles's is consistent with the Nation's historical traditions, § 922(g)(1) violates the Second Amendment as applied to Mr. Charles. *See Bruen*, 142 S. Ct. at 2126.

---

[14] In *Collette*, this Court did not address the defendant's as-applied challenge to § 922(g)(1). It explained in a footnote only: "The Court does not analyze whether there is a difference between violent and non-violent felons. Section 922(g)(1) says 'a *crime* punishable by imprisonment for a term exceeding one year,' and the Court will not read two competing definitions of 'a crime' into the statute. Even so, the Court believes there is still much left unknown post-*Bruen*." 2022 WL 4476790, at *8 n.75. The Court's brief statutory interpretation does not foreclose an as-applied challenge to § 922(g)(1). Courts have, in fact, long expressed a preference for as-applied challenges to statutes. *See, e.g., Hollis v. Lynch*, 121 F. Supp. 3d 617, 629-30 (N.D. Tex. 2015).

## IV.  CONCLUSION

WHEREFORE, for the foregoing reasons, Mr. Charles requests that the Court dismiss the Indictment.

        Respectfully submitted.

        MAUREEN SCOTT FRANCO
        Federal Public Defender


        /s/ ANTHONY J. COLTON

        Supervisory Assistant Federal Public Defender
        Western District of Texas
        200 E. Wall Street, Suite 110
        Midland, Texas 79701
        (830) 308-6040
        (432) 684-3814 (FAX)

        Bar Number: Texas 24064564

        *Attorney for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the Assistant U.S. Attorney of record.

/s/ Anthony J. Colton
*Attorney for Defendant*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** § § | |
| **v.** § § § | **Cause No. MO-22-CR-00154** |
| **RAYMOND CHARLES JR** § § § | |

## ORDER

On this day, the Court considered Defendant's Motion to Dismiss the Indictment, and the Court is of the opinion that the motion should be **GRANTED**. Accordingly, it is hereby:

**ORDERED** that the Indictment in this cause is **DISMISSED**.

SIGNED this ___ day of _____, 2022.

_____
**DAVID COUNTS**
**UNITED STATES DISTRICT JUDGE**